IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 16-07981 (ESL)

FERNANDO LOPEZ LLANOS                            CHAPTER 13

    Debtor

## OPINION AND ORDER

This case is before the court upon the *Motion to Dismiss for Cause Under Section 1307(c) of the Bankruptcy Code* with a two (2) year bar to refile (the "*Motion to Dismiss*", Docket No. 50) filed by Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota") alleging bad faith and concealment of assets. Also before the court is the *Request for Dismissal Pursuant to 11 U.S.C. §1307(c)(1)* and joining Toyota's request for a two (2) year bar to refile (Docket No. 52) filed by the Puerto Rico Housing Finance Authority ("PR Housing") alleging unreasonable delay in presenting a complete, organized and confirmable plan that is prejudicial to creditors. The Court held a hearing on December 5, 2017 to consider, *inter alia*, the *Motions to Dismiss* filed by Toyota and PR Housing. After considering the parties' arguments, for the reasons stated below, the *Motions to Dismiss* filed by Toyota and PR Housing are hereby granted with a two (2) year bar to re-file.

### Procedural and Factual Background

On February 5, 2008, the Debtor filed a Chapter 13 bankruptcy petition in Case No. 08-00659 (the "First Petition"). On December 23, 2008, the First Petition was dismissed for failure to make the payments under the plan. See Case No. 08-00659 Docket Nos. 23 and 25.

On June 29, 2009, the Debtor filed a second Chapter 13 bankruptcy petition (the "Second Petition", Case No. 09-05245 Docket No. 1). On November 17, 2009, the Second Petition was dismissed for failure to make payments under the plan. See Case No. 09-05245 Docket Nos. 23, 24 and 28.

On January 30, 2013, the Debtor filed a *Complaint* against Toyota with the U.S. District Court for the District of Puerto Rico. See Civ. Case No. 13-01067-DRD Docket No. 1. This case was subsequently transferred to the U.S. District Court for the Central District of California (Southern Division - Santa Ana) by the Judicial Panel on Multidistrict Litigation, Civ. Case No. 13- 00916-JVS (C.D. Cal.) (the "Civil Case"). See Docket No. 143-1.

On or about July 13, 2016, the Debtor and Toyota reached a Confidential Settlement Agreement (the "Settlement Agreement") pursuant to which on or about September 7, 2016, Toyota paid certain settlement funds to the Debtor by check (the "Settlement Proceeds"). See Docket No. 143-2, pp. 1-2. Pursuant to the Settlement Agreement, the Debtor also agreed to deliver clear title of a Toyota vehicle (the "Vehicle") to Toyota's counsel within 10 days from the execution of such document to facilitate its destruction. See Docket No. 143-2, p. 2.

On September 16, 2016, the U.S. District Court for the Central District of California entered an Order granting the stipulation between the Debtor and Toyota and dismissed the Civil Case. See Docket No. 143-3. The Court in the Civil Case retained jurisdiction for 90 days to enforce the Settlement Agreement. Id. at 2.

The Debtor defaulted the Settlement Agreement and did not deliver the Vehicle and clear title within the deadline approved by the Court in the Civil Case. See Docket No. 143-2.

On October 4, 2016 (the "Bankruptcy Petition Date"), that is, twenty-seven (27) days after receiving the Settlement Proceeds, the Debtor filed the instant bankruptcy case. Compare Docket No. 1 with Docket No. 143-2, p. 2.

On December 19, 2016, Toyota filed a *Motion to Enforce the Settlement Agreement* in the Civil Case (Civil Case Docket No. 54). On January 9, 2017, the Debtor filed a *Short Reply Motion* in that Civil Case alleging, *inter alia*, that: (a) Oriental Bank is the account holder of the Debtor's lease and therefore he could not transfer the Vehicle; (b) Toyota was aware that he could not transfer the title of the Vehicle; (c) the Settlement Agreement cannot be enforced; (d) this is a "matter of bad faith litigation"; and (e) the responsibility for the payment of keeping the Vehicle in the depository is Toyota's and not the Debtor's. See Docket No. 143-4. The Debtor stated in

the Civil Case that he placed the Vehicle in a "depositary". See Docket No. 143-4, pp. 1-2, ¶¶ 2, 3.

On January 17, 2017, the U.S. District Court for the Central District of California entered an Order in the Civil Case instructing the Debtor to deliver the Vehicle within 15 days and all documents necessary to evidence transfer of clear title to Toyota. See Docket No. 143-2, p. 3. The Court in the Civil Case cautioned the Debtor that if he failed to comply, he may be subject to sanctions, including being held in contempt of court. Id. The 15-day period expired on February 1, 2017. Id. The U.S. District Court for the Central District of California specifically ruled as follows:

> [g]iven that the [V]ehicle was the key piece of evidence in the case, it was Lopez-Llanos' obligation–not Toyota's– to preserve the vehicle. Any contention that Toyota previously agreed to pay storage costs is superseded by Section 19 of the Settlement Agreement ("Settlement Agreement supersedes all prior agreement or understanding, whether written or oral."). Toyota has no obligation under the Settlement Agreement to pay storage costs.

See *Civil Minutes* entered in the Civil Case, Docket No. 143-3, pp. 2-3.

The Debtor did not disclose the instant bankruptcy petition to the U.S. District Court for the Central District of California in the Civil Case.

On October 5, 2016, the Court issued a *Notice of Chapter 7 and 13 Case Review and Possible Dismissal* for failure to submit schedules, the statement of financial affairs and chapter 13 statement of current monthly income and means test calculation. See Docket No. 6.

On October 18, 2016, the Debtor filed the corresponding *Schedules* describing his income, expenses, properties and debts (Docket No. 9). *Schedules D and E/F* did not include Toyota as a secured or unsecured creditor or as a party in interest in this case. See *Schedule D*, Docket No. 9, pp. 12-15; *Schedule E/F*, Docket No. 9, pp. 19- 26. *Schedule D* did not include PR Housing as a secured creditor even though it is the holder of a mortgage lien -duly registered with the Puerto Rico Property Registry- over the Debtor's residential property listed in *Schedule A*. See *Schedule D*, Docket No. 9, pp. 12-15.

-3-

The Debtor disclosed two vehicles: a 2015 KIA Forte and a 2001 Suzuki Baleno. See *Schedule A/B*, Docket No. 9, p. 4. The Debtor did not disclose the Toyota Vehicle, which is the object of the Civil Case. See id. The Debtor did not include any information related to the alleged storage or the balance thereof in the schedules he filed in the instant case. See *Schedule D* and *Schedule E/F*, Docket No. 9, pp. 12-14; pp. 19-26, respectively. The Debtor did not list any creditor as having a lien over the Vehicle, nor did he include Oriental Bank as a creditor in the schedules or the creditors' matrix list. See *Schedule D* and *Schedule E/F*, Docket No. 9, pp. 12-14, 19-26, respectively. The Debtor did not disclose having an executory contract with any party related to the Vehicle or a lease thereof. See *Schedule G*, Docket No. 9, p. 27. The Debtor did not disclose having any executory agreement with a depositary for storage of the Vehicle in the *Schedules*. See *Schedule G*, Docket No. 9, p. 27.

On October 18, 2016, the Debtor filed his *Statement of Financial Affairs* (Docket No. 8). The Debtor did not include reference to the Toyota Vehicle, the Civil Case, the Settlement Agreement and/or the Settlement Proceeds he received therefrom less than a month prior to filing the instant case. Specifically, question 5 of the *Statement of Financial Affairs* requires the Debtor to disclose information of any income received during the two years prior to the bankruptcy filing date, and question no. 9 requires the Debtor to disclose information of any lawsuit in which the Debtor was a party one year prior to the bankruptcy filing. See Docket No. 8, pp. 2-3.

The § 341 meeting of creditors was scheduled for November 15, 2016 (the "§341 Meeting"). Both the Debtor and his attorney were present at the §341 Meeting; oath was taken to the Debtor, but the meeting was not held because of lack of information and documents including evidence of income the six (6) months prior to filing. See *Minutes of 341 Meeting*, Docket No. 15. Neither the Debtor nor his attorney mentioned the Vehicle, the Civil Case, the Settlement Agreement and/or the funds received in the Civil Case. See Docket No. 15. The Chapter 13 Trustee (the "Trustee") continued the §341 meeting of creditors for December 29, 2016 at 10:30 am (the "Second §341 Meeting", Docket No. 15).

On December 28, 2016, the Debtor filed an *Amended Chapter 13 Payment Plan* (the "*Amended Plan*", Docket No. 25). The Debtor did not provide any treatment for Toyota or for PR Housing as secured creditors. Id.

The Second §341 Meeting was not held as the Debtor did not attend due to medical reasons. The Debtor's attorney was present but did not mention the Vehicle, the Civil Case, the Settlement Agreement and/or the funds received in the Civil Case. The Chapter 13 Trustee continued the Second §341 Meeting for January 25, 2017 at 1:00 pm (the "Third §341 Meeting", Docket No. 26).

On January 25, 2017, the Trustee held and closed the Third §341 Meeting. The Chapter 13 Trustee stated that "Debtor received funds from a stipulation reached in a claim to Toyota few months prior filing. Debtor has to disclose it in SOFA and provide copy of stipulation. Also, to inform the use of said funds." *Minutes*, Docket No. 31, p. 3, ¶ 8. The *Amended Plan* dated December 28, 2016 was not recommended for confirmation by the Chapter 13 Trustee due to objections to exemptions claimed; failure to comply with disposable income; inconsistencies in income and expenses; lack of appropriate disclosures on *Schedule A/B* and *Statement of Financial Affairs*; failure to submit state and federal income tax returns; and failure to provide for secured creditor PR Housing, among other objections. Also see the *Unfavorable Report on Confirmation* (Docket No. 34).

On February 10, 2017, PR Housing filed Proof of Claim No. 6 in the secured amount of $125,308.17 with the appropriate evidence of the existence of a duly registered lien over the Debtor's residential property located at Condominio Pontezuela, Apt #3C, Bldg. A-1, Pontezuela Avenue, Carolina, Puerto Rico. See Claims Register No. 3.

On February 16, 2017, the Trustee filed an *Unfavorable Report on Confirmation* stating that the Debtor had failed to disclose the terms of the stipulation with Toyota, provide a copy of the same, and indicate the use of such Settlement Proceeds. See Docket No. 34, p. 2. The Chapter 13 Trustee's *Report* included the same objections stated at the Third §341 Meeting including lack of feasibility; failure to comply with disposable income test and liquidation value test; failure to

-5-

provide for secured claim filed by PR Housing; failure to disclose pre-petition transactions; and failure to submit evidence of tax returns, among others.

On April 24, 2017, Toyota filed a *Motion to Dismiss* (Docket No. 50) sustaining that the instant petition was filed in bad faith and, considering the totality of the circumstances, requested the dismissal with a bar to refile for at least two (2) years. On even date, PR Housing filed a *Request for Dismissal Pursuant 11 U.S.C. §1307(c)(1)* (Docket No. 52) alleging unreasonable delay by the Debtor that is prejudicial to creditors. PR Housing also joined Toyota's request for a bar to refile. Id.

On April 25, 2017, the Debtor filed an amended *Statement of Financial Affairs* to "include the proceeds of Settlement Agreement received in year 2016 from Toyota entities for damages resulting from unintended acceleration of Toyota motor vehicle" (Docket No. 54, p. 1). The amended *Statement of Financial Affairs* disclosed the Civil Case for the first time. See Docket No. 54, p. 10. No other amendment was filed by the Debtor on such date to any schedule, statement or plan.

The first confirmation hearing was held on April 26, 2017. See *Minute Entry*, Docket No. 55. The Debtor appeared at the hearing represented by his counsel of record. Id. After considering the arguments and objections to the confirmation of the *Amended Plan dated December 28, 2016* presented by Toyota, PR Housing and the Chapter 13 Trustee, the Court denied the confirmation pursuant to PR LBR 3015. Id.

On May 9, 2017, Toyota filed a *Motion to Redact Debtor's Amended Statement of Financial Affairs* because the Debtor disclosed information contained in the Settlement Agreement, including the payment received, which is subject to a confidentiality agreement. See Docket No. 60.

Between May 10 and May 11, 2017, the Debtor filed *Amended Schedules C, I* and *J* and *Amended Plan dated May 11, 2017* (Dockets No. 66-70). On May 16, 2017, the Chapter 13 Trustee filed a *Report on Confirmation* with an unfavorable recommendation to the *Amended Plan dated May 11, 2017* (Docket No. 71). The Trustee's unfavorable recommendation was

premised on: lack of feasibility; insufficiency of funds; failure to comply with the liquidation value test and the disposable income test; failure to make appropriate treatment to secured creditors; failure to disclose assets and attorney's fees; failure to submit state and federal tax returns; and "Other" arguments included in prior reports on confirmation. Id.

On May 30, 2017, the Debtor filed a *Reply to Toyota's Motion to Dismiss* (Docket No. 84) alleging in essence that: (a) the title of the Vehicle is in Eurobank's name; (b) the Debtor is not a bad faith serial filer; and (c) the Debtor did not disclose the Civil Case or the Settlement Proceeds received therefrom because the Settlement Agreement is confidential. On May 31, 2017, after the expiration of the extension of time requested to file a reply to PR Housing request for dismissal, the Debtor filed a *Reply to Puerto Rico Housing Finance Authority's Request for Dismissal*. See Dockets Nos. 73, 77, 85 and 86. The Debtor alleged having submitted the information and/or documents requested by the Chapter 13 Trustee and alleged that there is no "cause" under 11 U.S.C. § 1307 to dismiss or convert the case. See Docket No. 86.

On June 16, 2017, Toyota filed a *Reply to the Debtor's Reply to Motion to Dismiss* (Docket No. 97) asserting that: (a) the U.S. District Court for the Central District of California had already determined that it is the Debtor's responsibility to preserve the Vehicle and thus he has a proprietary interest over it; (b) the Debtor is attempting to re-argue several matters that have been adjudicated by the U.S. District Court for the Central District of California; (c) collateral estoppel precludes him from doing so; and (d) the totality of the circumstances in the case supports a finding of bad faith in the filing of the petition.

That same day, PR Housing filed a *Sur Reply to Debtor's Reply to PRHFA's Request for Dismissal Pursuant to 11 U.S.C. §1307 (c)(1)* (Docket No. 96) asserting that: (a) the status of the confirmation was exactly the same as it was back on the date of the Third §341 Meeting; (b) the case was not ready for confirmation; and (c) Debtor's delay in obtaining the confirmation of a Chapter 13 Plan constitutes an unreasonable delay that is prejudicial to creditors.

On June 21, 2017, the Court entered two separate *Orders and Notices* (Docket Nos. 100 and 101) scheduling a hearing to consider all pending contested matters and a second confirmation hearing for December 5, 2017.

On December 5, 2017, the Court held a hearing to consider the pending contested matters.

Jurisdiction

The Court has jurisdiction to determine the instant contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2). "A core proceeding, for bankruptcy jurisdictional purposes, is an action that has its foundation in the creation, recognition, or adjudication of rights that would not exist independent of a bankruptcy environment." In re Medical Educational & Health Services, Inc., 459 B.R. 527, 545 (Bankr. D.P.R. 2011). A request for dismissal is a core proceeding.

Applicable Law and Analysis

*Dismissal for Cause, Bad Faith and the Debtor's Duty to Disclose*

Section 1307(c)(1) of the Bankruptcy Code provides for the dismissal of a case under Chapter 13 "for cause, including unreasonable delay by the debtor that is prejudicial to creditors". 11 U.S.C. § 1307(c)(1).

"The list of grounds for dismissal or conversion found in § 1307 is not exhaustive; the court is not limited by the specific circumstances specifically mentioned there. Other factors warranting dismissal of a rubric of 'lack of good faith' often referred to as 'bad faith'." In re Gonzalez Ruiz, 341 B.R. 371, 382 (B.A.P. 1st Cir. 2006). "The powers bestowed upon the court in §105(a) include the equitable and discretionary power to dismiss a case under §1307(c)." Howard v. Lexington Invs., 284 F.3d 320, 323 (1st Cir. 2002). In interpreting the Bankruptcy Court's equitable powers Section 105, the U.S. Supreme Court has stated that "[a] bankruptcy court has statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code'". Law v. Siegel, 134 S.Ct. 1188, 1197 (2014), quoting 11 U.S.C. § 105(a). The Supreme Court imposed the following limitation: "whatever equitable powers remain in the bankruptcy courts must and can only be exercised

within the confines of the Bankruptcy Code." Id. at 1194. After Siegel, the U.S. Court of Appeals for the First Circuit (the "First Circuit") adopted a similar analysis in In re Oak Knoll Associates, L.P., 835 F.3d 24 (1st Cir. 2016):

> Congress has given bankruptcy courts the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). We have cautioned, however, that this does not give bankruptcy courts "a roving writ, much less a free hand" to provide equitable relief. In re Jamo, 283 F.3d 392, 403 (1st Cir. 2002). Rather, this statute "may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code." Id.

In re Oak Knoll Associates, L.P., 835 F.3d at 34. Section 1307 affords an "identifiable right" conferred in the Bankruptcy Code.

*Bad Faith*

Bankruptcy Courts routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words "for cause." In practical effects, a ruling that an individual's Chapter 13 case should be dismissed because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of "'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect." Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 373-374 (2007).

"The determination of whether the movant has established *prima facie* that there is a lack of good faith (or bad faith) in the filing of a bankruptcy petition is a fact intensive inquiry in which the court analyzes the totality of the circumstances." In re Costa Bonita Beach Resort Inc., 479 B.R. 14, 40 (Bankr. D.P.R. 2012).

Bankruptcy courts generally consider the following factors in analyzing the totality of the circumstances test to determine whether a Chapter 13 petition has been filed in bad faith: (1) the debtor's accuracy in stating her debts and expenses; (2) the debtor's honesty in the bankruptcy process, including whether he or she has attempted to mislead the court and whether he or she has

made any misrepresentations; (3) whether the Bankruptcy Code is being unfairly manipulated; (4) the type of debt sought to be discharged; (5) whether the debt would be dischargeable in a Chapter 7; (6) the debtor's motivation and sincerity in seeking Chapter 13 relief; (7) the debtor's history of filings and dismissals; and (8) whether egregious behavior is present. See In re Gonzalez-Ruiz, 341 B.R. at 383; In re Cabral, 285 B.R. 563, 573 (B.A.P. 1st Cir. 2002).

*Concealment of Assets*

"[T]here is no "Oops" defense to the concealment of assets." Marrama v. Citizens Bank of Massachusetts, 549 U.S. at 370. "When a debtor files [his] Schedules, []he does so under the equivalent of an oath." In re Crawford, 841 F.3d 1, 7 (1st Cir. 2016). "Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." In re Wood, 291 B.R. 219, 226 (B.A.P. 1st Cir. 2003). The duty to disclose is continuous throughout the pendency of the bankruptcy case. See Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n, 932 F. Supp. 859, 867 (E.D. Tex. 1996) ("[t]he duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action"); In re Adams, 481 B.R. 854, 858 (Bankr. N.D. Miss. 2012) (same); Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002) ("The duty to disclose in a continuing one that does not end once the forms are submitted ... [f]ull and honest disclosure in a bankruptcy case is 'crucial to the effective function of the federal bankruptcy system'"); In re Roberts, 556 B.R. 266, 275 (Bankr. S. D. Miss. 2016) (a "[d]ebtor's duty to disclose is absolute"). In In re Bouchard, 560 B.R. 385 (Bankr. D.R.I. 2016), a case with facts similar to the instant case, the Court stated that:

> In summary, [the Debtor] inaccurately disclosed his assets, income, debts, and expenses; he was untruthful during the plan confirmation process; and he either intentionally or recklessly misled the Court and the other parties through material omissions and misrepresentations of information… Mr. Bouchard's subsequent amendments and supplements to his schedules to include some of the omitted information after he was challenged by Ms. Rotella "cannot expunge the falsity" of his original oath, and the timing of his disclosures in response to questioning at the Creditors' Meeting and at the hearings show that, to put it bluntly, he disclosed material information only because "the cat was out of the bag."

-10-

In re Bouchard, 560 B.R. at 396.

In the totality of the circumstances, this Court finds that the Debtor's actions constitute bad faith that warrants dismissal. The Debtor failed to disclose the Civil Case, the Settlement Agreement, and/or the Settlement Proceeds he received less than a month before filing the instant case. In particular, Question no. 5 of the *Statement of Financial Affairs* requires the Debtor to disclose information of any income received during the two years prior to the bankruptcy filing date, and Question no. 9 requires the Debtor to disclose information of any lawsuit in which the Debtor was a party one year prior to the bankruptcy filing. See Docket No. 8, pp. 2, 3. In In re Zizza, 875 F.3d 728 (1st Cir. 2017), the First Circuit recently considered a debtor's answers to these questions and explained that: "The question in the initial Statement of Financial Affairs could not have been clearer; it asked her whether [he] was involved in any suits within one year preceding [his] bankruptcy filing". Id. at 733. It was not until Toyota requested the dismissal of the instant case that the Debtor amended the *Statement of Financial Affairs* to include the Civil Case and the proceeds he received therefrom. See *Debtor' [sic] Amendment of Statement of Financial Affairs Dated April 25, 2017*, Docket No. 54. In other words, the Debtor amended the *Statement of Financial Affairs* only when "the cat was out of the bag." In re Bouchard, 560 B.R. at 396. But in the totality of the circumstances, the amendment does not cure the Debtor's prior concealment.

The Court further finds that the Debtor concealed crucial information and assets in his schedules. The U.S. District Court for the Central District of California found in the Civil Case that the Debtor was responsible for storage of the vehicle and payment for such storage. See Docket No. 143-2, p. 3. Furthermore, such Court also found that the Debtor "was obligated to deliver clear title. Part of the consideration Toyota paid was for Lopez-Llanos to clear any liens, if need be out of his settlement proceeds." Id. (internal citations omitted).

The Debtor did not list any creditor as having a lien over the Vehicle. Nor did the Debtor include Oriental Bank as a creditor in the schedules or the creditors' matrix of the instant case. See *Schedule D* and *Schedule E/F*, Docket No. 9, pp. 12-14, 19-26, respectively. The Debtor did

not disclose having an executory contract with any parties related to the Vehicle or a lease thereof. See *Schedule G*, Docket No. 9, p. 27. The Debtor did not disclose having any executory agreement with a depositary for storage of the Vehicle in the schedules. See *Schedule G*, Docket No. 9, p. 27.

Considering the Debtor's significant concealment of crucial information under penalty of perjury, his history of previous bankruptcy filings and dismissals, and his actions after Toyota exposed the concealed information, the Court finds that the Debtor failed to comply with his ongoing duty disclose.

*Unreasonable Delay that is Prejudicial to Creditors*

Section § 1307(c)(1) of the Bankruptcy Code establishes that "[e]xcept as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate for cause, including unreasonable delay by the debtor that is prejudicial to creditors". 11 U.S.C. §1307 (c)(1).

Courts have found "unreasonable delay" where a debtor failed to timely file her state tax returns, failed to make payments under the plan, failed to disclose ownership of assets on schedules, and "fail[ed] to make good faith payments to the Chapter 13 Trustee. In re Blaise, 219 B.R. 946, 950-951 (B.A.P. 2nd Cir. 1998). The Court in In re Blaise further indicated that [a] court's "consideration whether to dismiss or convert under §1307(c) requires the court further to determine whether the best interests of the estate and its creditors dictate conversion or dismissal." Id. at 950.

In Howard, the First Circuit stated that "[w]here a further delay by the debtor 'would only prejudice creditors and [make] the feasibility of any plan unlikely' conversion or dismissal is proper." 284 F.3d at 323 (citing In re Gonzalez, 99 B.R. 188, 191 (Bankr. D.P.R. 1989)).

In In re Woods, 2012 WL 2343897 (Bankr. D. Idaho 2012), the Court considered a motion to dismiss by the Trustee and determined that:

-12-

[o]n the whole of th[e] record, the Court finds Trustee's Motion well taken. A delay from September 14, 2011, to October, 2012 (or, the Court suspects, more likely November or December, if not later) before a confirmation hearing can occur and a plan can be confirmed is an unreasonable delay. That creditors are stayed from collection but cannot receive payments until a plan is confirmed establishes prejudice from this unreasonable delay.

In re Woods, 2012 WL 2343897, at *2.

"In seeking bankruptcy relief under chapter 13 of the Bankruptcy Code, the Debtor undertook the obligation to take reasonable, appropriate steps to move the case along the path toward confirmation of a chapter 13 plan. Particularly because this was not her first bankruptcy case, the standard for evaluating the reasonableness of her efforts is necessarily more stringent than if this case were her first bankruptcy filing." In re Jackson, 2007 WL 1188202, at *4 (Bankr. E.D. Pa. 2007).

The Debtor in the instant case failed to submit evidence of having complied with the obligation of filing state and federal tax returns; failed to disclose ownership of assets on schedules (including the Vehicle); failed to make good faith payments to the plan; failed to amend the Statement of Current monthly Income to disclose pre-petition income; failed to provide creditor Toyota with the documents and information required for discovery; failed to disclose the Civil Case and failed to file a confirmable plan. The Court finds that the Debtor's actions constitute unreasonable delay and thus, cause to dismiss under 11 U.S.C. § 1307 (c)(1).

The fact that the Debtor had over a year to confirm a plan prior to the second hearing on confirmation held on December 5, 2017 and yet presented no amended plan, schedules or statements and did not submit to the Chapter 13 Trustee and creditors information requested with sufficient time to comply, establishes a delay that is prejudicial to creditors. The bankruptcy petition was filed on October 4, 2016 and yet, over a year thereafter at the second confirmation hearing scheduled for December 5, 2017, the case was far from being confirmed due to the Debtor's failure to comply with his ongoing duty to disclose, *inter alia*.

-13-

The Court further finds that Debtor was lax in his prosecution of this bankruptcy petition and his delay in preparing the case for confirmation is constitutes cause to dismiss for unreasonable delay that is prejudicial to creditors. In the totality of the circumstances, dismissal is proper because the Debtor failed to ameliorate the prejudice of the creditors who were stayed, for over a year, of continue collection actions and did not receive any payment or appropriate treatment under the proposed plan. "Section 1307(c)(1) is concerned with prejudice suffered by creditors from delay, not the predicted harm to be suffered by a debtor from dismissal." In re Woods, 2012 WL 2343897, at *2. In bankruptcy, delays and the passage of time prejudice creditors and make feasibility of plans less likely. See Howard v. Lexington Investments, Inc., 284 F.3d at 323.

Taking into consideration Debtor's lack of appropriate disclosures by failing to file timely amended schedules and statements, as requested by the Chapter 13 Trustee and creditors, as well as his failure to comply with the requirements of 11 U.S.C. § 1325 to confirm a chapter 13 plan in a period that exceeded one year, the Court finds cause to dismiss under 11 U.S.C. § 1307 (c)(1).*(D)*

*Bar to Refile*

Section 109(g) of the Bankruptcy Code states that no individual may file for bankruptcy if he/she "has been a debtor in a case pending under this title at any time in the preceding 180 days if (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title." 11 U.S.C. § 109(g).

Thus, Section 109(g) imposes a time restriction for debtors who fail to abide by the court's orders or who seek the voluntary dismissal of their case after the Court has granted the relief from stay.

Similarly, Section 349(a) of the Bankruptcy Code states that "unless the court orders otherwise", the dismissal of a case does not "prejudice the debtor with regard to the filing of a

subsequent petition under this title, except as provided in section 109(g) of this title." 11 U.S.C. § 349(a). Section 349(a) expressly confers bankruptcy courts the authority and discretion to make exceptions to the general rule that the dismissal of a case is without prejudice to the filing of a subsequent petition.

In this regard, Section 105(a) of the Bankruptcy Code "provides the bankruptcy court broad authority to exercise its equitable powers-where 'necessary' or 'appropriate'-to facilitate the implementation of other Bankruptcy Code provisions... [A]lthough § 105(a) does not itself create a private right of action[,] a court may invoke § 105(a) 'if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code." In re Nosek, 544 F.3d 34, 43-44 (1st Cir. 2008). Also see In re Oak Knoll Associates, L.P., 835 F.3d at 34.

This Court has authority to order a bar to refile to sanction serial or bad faith filers by barring future filings for reasons and longer periods of time other than those specified by § 109(g) from either § 105(a), § 349(a), or both. See In re Gonzalez-Ruiz, 341 B.R. at 385-386; In re Glenn, 288 B.R. 516, 520 (Bankr. E.D. Tenn. 2002).

The uncontested facts in this case and the totality of the circumstances constitute bad faith conduct by the Debtor that warrant dismissal with a 2 year bar to refile.

Conclusion

For the reasons stated herein, Toyota's and PR Housing's *Motions to Dismiss* (Docket Nos. 50 and 52) are hereby granted. Hence, the instant case is hereby dismissed with a two (2) year bar to re-file.

SO ORDERED.

In San Juan, Puerto Rico, this 14th day of December, 2017.

ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge

-15-